**United States District Court**
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                   NORTHERN DISTRICT OF CALIFORNIA
7
8   LINDA HOHU,                              No. C-12-4906 EMC
9              Plaintiff,
                                            **ORDER GRANTING DEFENDANT'S**
10      v.                                   **MOTION TO DISMISS AND DENYING**
                                            **MOTION FOR SANCTIONS**
11  WENDY HATCH,
                                            **(Docket No. 13)**
12             Defendant.
    _____/
13
14                   **I.    INTRODUCTION**
15          Plaintiff Linda Hohu ("Hohu") filed an action in this Court seeking declaratory relief that
16  two claims asserted in a pending California state court action by Defendant Wendy Hatch ("Hatch"),
17  the Administrator of the Estate of John K. Hohu, are preempted by the Employee Retirement Income
18  Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq. See* Complaint ("Compl.") (Docket No.
19  1).  Defendant Hatch thereafter filed a motion to dismiss the action under Fed. R. Civ. P. 12(b)(1),
20  arguing that this Court lacks subject matter jurisdiction over Plaintiff's complaint.  *See* Def.'s Mot.
21  to Dismiss (Docket No. 13).  Defendant requests that this Court "dismiss this action pursuant to
22  FRCP 12(b)(1) on the grounds that the federal court lacks subject matter jurisdiction (federal
23  question) over the Plaintiff's 'Complaint for Declaratory Relief (Federal Preemption),' as previously
24  determined by U.S. District Court Judge Josephine Staton Tucker on September 12, 2012 in the
25  United States District Court Central District Southern Division Case No: SACV 12-1067-JST."
26  Def.'s Mot. to Dismiss at 2.  Defendant has concurrently moved for Rule 11 sanctions in the sum of
27  $3,646.00 against Plaintiff Hohu arguing that Plaintiff's complaint lacks a factual foundation for
28  establishing subject matter jurisdiction in federal court, a fact allegedly known by Plaintiff and her

United States District Court
For the Northern District of California

1  attorney as a result of the U.S. District Court for the Central District of California having previously
2  remanded these same claims to state court for lack of subject matter jurisdiction.  Having considered
3  the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court
4  hereby **GRANTS** Defendant Hatch's motion for the reasons set forth below.

5  ## II.    FACTUAL & PROCEDURAL BACKGROUND

6           John K. Hohu, the deceased ex-husband of Plaintiff Linda Hohu, was an employee of Cisco
7  Systems, Inc., and participated in his employer's life insurance plan and stock incentive or
8  Restricted Stock Units ("RSU") plan, both of which are "employee benefit plans" governed by
9  ERISA.  Compl. ¶ 2; *see* 29 U.S.C. § 1002(3) (defining "employee benefit plan").  Plaintiff Linda
10 Hohu was designated as John Hohu's beneficiary under each plan.  Compl. ¶ 2.  On July 9, 2008,
11 some time after John Hohu had made his beneficiary designations, he and the Plaintiff became
12 parties to marital dissolution proceedings in the Superior Court of California, County of Alameda.
13 *Id.* ¶ 12.  California Family Code § 2040 subjects all parties to marital dissolution proceedings to
14 certain automatic temporary restraining orders ("TRO"), including an order:

15         Restraining both parties from cashing, borrowing against, canceling,
           transferring, disposing of, or changing the beneficiaries of any insurance or
16         other coverage, including life, health, automobile, and disability, held for the
           benefit of the parties and their child or children for whom support may be
17         ordered.

18 Cal. Fam. Code § 2040(a)(3).  During the course of the Hohus' marital dissolution proceedings, the
19 Alameda County Superior Court entered an order bifurcating the issue of marital status from all
20 other issues, and provided that "[u]ntil a judgment has been entered and filed on all remaining
21 issues, neither party may change the beneficiary of any insurance or other coverage, including life,
22 health, automobile and disability, held for the benefit of the parties and their minor children."  *See*
23 Compl., Ex. A (Stipulation and Order RE: Bifurcation of Status of Marriage, *In Re Marriage of*
24 *Hohu and Hohu*, Case No. VF-08-397217) § 4.

25         John Hohu died on June 21, 2011, after the court had taken the case under submission, but
26 before it had entered its decision and judgment.  Compl. ¶ 15-16.  Following John Hohu's death,
27 Plaintiff made claims for benefits under both the life insurance and RSU plans.  Compl. ¶¶ 18, 20.
28 The administrator for each plan determined that Plaintiff was entitled to benefits pursuant to the

United States District Court

For the Northern District of California

terms of the respective plans, and disbursed to Plaintiff the full amount of all benefits due and payable under the plans. *Id.* Defendant Hatch made competing claims to benefits under each plan, but the administrator for each plan found that she was "not entitled to any of the plan benefits ultimately paid to Plaintiff Hohu." *Id.* ¶¶ 19, 21. Defendant did not appeal the decision of the plan administrators, but instead, after the benefits were disbursed to Plaintiff, brought an action under California Probate Code § 850 in the Superior Court of California, County of Orange, to recover the benefits that had been distributed to Plaintiff. Compl. ¶ 22. *See also* Petition, *Wendy Hatch, Administrator of the Estate of John K. Hohu aka John Hohu v. Linda Hohu and Does 1-5 inclusive*, Case No. 30-2011-00521387-PR-PL-LJC (Docket No 14, Ex. 1).[1] Defendant's probate action, filed on June 5, 2012, seeks to recover from Plaintiff the benefits distributed under the life insurance and RSU plans (valued at approximately $1.5 million) on the grounds that these assets were obtained by Plaintiff in violation of an automatic TRO imposed by California Family Code § 2040 and the judgment entered by the Alameda County Superior Court in *In Re Marriage of Hohu and Hohu*, Case No. VF-08-397217 ("Probate Action"). *See* Compl. ¶¶ 22-23. Defendant's probate action asks the Orange County Superior Court to impose a constructive trust on the plan benefits distributed to Plaintiff in order to effectuate their eventual transfer back to the Estate of John Hatch. *See id.* ¶ 23.

Plaintiff removed Defendant's probate action to the United States District Court for the Central District of California on June 29, 2012, asserting that federal question jurisdiction existed under 28 U.S.C. § 1331 because Defendant's probate action was preempted by § 514(a) of ERISA. *See* Notice of Removal, *Wendy Hatch, Administrator of the Estate of John K. Hohu aka John Hohu v. Linda Hohu and Does 1-5 inclusive*, Case No. 12-CV-1067 JST-FMO (Docket No. 14, Ex. 2). Defendant thereafter filed a Motion for Remand, arguing that the district court lacked subject matter

---

[1] Defendant requests that this Court take judicial notice of the proceedings in Defendant's state court probate action. *See* Request for Judicial Notice (Docket No. 14). Under Federal Rule of Evidence 201(b), a court may take judicial notice of an adjudicative fact not subject to reasonable dispute because it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The second prong of Rule 201(b) encompasses taking judicial notice of "court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

United States District Court
For the Northern District of California

1   jurisdiction because the state probate action was not completely preempted by ERISA.  Motion for

2   Remand (Docket No. 14, Ex. 3).  After a hearing on Defendant's motion, District Judge Josephine

3   Tucker remanded the matter back to the Orange County Superior Court for want of subject matter

4   jurisdiction.  *See* Order Granting Petitioner's Motion for Remand ("Remand Order") (Docket 14, Ex.

5   6).  Judge Tucker concluded that "Petitioner's state probate action to recover assets allegedly

6   misappropriated in violation of state court orders is not completely preempted by ERISA," and held,

7   "[a]ccordingly, the state court claim has not been converted into a federal claim and the Court lacks

8   subject matter jurisdiction over this case."  *Id*. at 6.

9          Following Judge Tucker's order of remand, Plaintiff filed the instant action in this Court.

10  Her complaint asks for a declaratory judgment that Defendant's state law probate claims to benefits

11  distributed from the life insurance plan (Count One) and the RSU plan (Count Two) are preempted

12  by 29 U.S.C. § 1144(a), ERISA's express preemption provision.  Compl. ¶¶ 24-33.  As with

13  Plaintiff's earlier Notice of Removal, Plaintiff's instant complaint before this Court alleges that

14  "[t]his Court has jurisdiction of the subject matter of this suit pursuant to 28 U.S.C. § 1331."  Compl.

15  ¶ 3.  Defendant has moved to dismiss Plaintiff's action for lack of subject matter jurisdiction under

16  Rule 12(b)(1) on the grounds that, following Judge Tucker's ruling, Defendant's state probate action

17  is not completely preempted by ERISA, leaving this Court without federal question jurisdiction

18  under 28 U.S.C. § 1331.  *See* Def.'s Mot. to Dismiss at 5.  Defendant also seeks sanctions under

19  Rule 11 against Plaintiff and her lawyer in the amount of $3,646.00, a sum representing Defendant's

20  costs and fees for bringing this motion, on the grounds that Plaintiff's filing of this action was not

21  "well grounded in fact" or "warranted by existing law or a good faith argument for the extension,

22  modification, or reversal of existing law."  *Id*. at 14.

23                          **III.   DISCUSSION**

24  A.     Collateral Estoppel

25         Defendant argues that Plaintiff's declaratory action before this Court ought to be dismissed

26  for lack of subject matter jurisdiction under the doctrine of collateral estoppel.  Def.'s Mot. to

27  Dismiss at 2; Defendant's Supplemental Brief ("Def.'s Supp. Br.") (Docket No. 24) at 4.  "Collateral

28  estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation

United States District Court

For the Northern District of California

between the same parties. " *Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 910 (9th Cir. 1997) (quoting *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995)). "[T]he doctrine of collateral estoppel can apply to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action." *Steen*, 106 F.3d at 910 (quoting *United States v. Stauffer Chem. Co.,* 464 U.S. 165, 170-71 (1984)). "It is the general rule that issue preclusion attaches only '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.'" *Arizona v. California*, 530 U.S. 392, 414 (2000) (quoting Restatement (Second) of Judgments § 27, at 250 (1982)). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979) (citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328–329 (1971)). "The party asserting collateral estoppel must . . . show that the estopped issue is identical to an issue litigated in a previous action." *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995).

      1.    <u>Prior Litigation of Subject Matter Jurisdiction</u>

      The Supreme Court has held that "a judgment is entitled to full faith and credit – even as to questions of jurisdiction – when [a] second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Underwriters Nat. Assur. Co. v. N. Carolina Life & Acc. & Health Ins. Guar. Ass'n*, 455 U.S. 691, 706 (1982) (quoting *Durfee v. Duke*, 375 U.S. 106, 111 (1963)).

> After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined.  There is no reason to expect that the second decision will be more satisfactory than the first.

*Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938). *See also Durfee v. Duke*, 375 U.S. at 116 (where "jurisdictional issues ha[ve] been fully and fairly litigated by the parties and finally determined . . . , the [second] court . . . was correct in ruling that further inquiry was precluded.").

United States District Court
For the Northern District of California

Several circuits have held that prior determinations of a lack of jurisdiction bar relitigation of that same issue in subsequent proceedings. *See Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980) ("Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merit so as to make the case *res judicata* on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims.") (citations omitted); *N. Georgia Elec. Membership Corp. v. City of Calhoun, Ga.*, 989 F.2d 429, 433 (11th Cir. 1993) (collateral estoppel precluded relitigating jurisdictional question after first suit was dismissed for lack of federal jurisdiction, even though dismissal did not adjudicate the merits of the case); *Cutler v. Hayes*, 818 F.2d 879, 888 (D.C. Cir. 1987) ("A valid jurisdictional judgment has preclusive effect, we note, even if erroneous"); *Muniz Cortes v. Intermedics, Inc.*, 229 F.3d 12, 14 (1st Cir. 2000) ("Dismissal for lack of subject matter jurisdiction precludes relitigation of the issues determined in ruling on the jurisdictional question."). *See also Still v. Michaels*, 791 F. Supp. 248, 251 (D. Ariz. 1992) (relitigation of subject matter jurisdiction in "[t]he present suit is further barred under the doctrine of collateral estoppel or issue preclusion.").

In *Gupta v. Thai Airways Int'l, Ltd.*, 487 F.3d 759 (9th Cir. 2007), the Ninth Circuit considered a California state court's decision to dismiss a plaintiff's negligence action against Thai Airways on the grounds that the defendant had sovereign immunity from suit under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602, *et. seq.* Plaintiff had not appealed the state court's decision. *Id.*, 487 F.3d at 762. Instead, he filed a complaint in federal court alleging the same causes of action presented in the state court complaint. Defendant filed a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), arguing that the issue of jurisdiction "was *res judicata* by virtue of the state court's prior determination of these issues." *Gupta*, 487 F.3d at 762. The Ninth Circuit held that under California law, "an order denying a motion or dismissing a proceeding for procedural reasons such as lack of jurisdiction is not res judicata as to the merits of any *underlying substantive question*," but "such dismissal *does bar* re-litigation of issues necessary for the determination of jurisdiction." *Id.* at 766 (citations and quotation marks omitted) (emphasis in original). Since the state court's "decision on the jurisdictional question [was] based upon a determination of the merits of an issue before the court," the Ninth Circuit held that "it constitutes a

1   binding determination of that issue" and "therefore [had] a preclusive effect." *Id.* at 766-67 ("Gupta

2   had a full and fair opportunity to establish the jurisdiction of United States courts over Thai

3   Airways. He failed to do so. He does not now get a do-over.").

4          The record in this matter clearly indicates that the question of federal subject matter

5   jurisdiction under 28 U.S.C. § 1331 over the claims advanced in Plaintiff's instant declaratory

6   judgement action was "fully and fairly litigated and finally decided in the court which rendered the

7   original judgment." *Underwriters Nat. Assur. Co. v. N. Carolina Life & Acc. & Health Ins. Guar.*

8   *Ass'n*, 455 U.S. at 706. Plaintiff's Notice of Removal indicates that removal of Defendant's earlier

9   state probate action was sought based on ERISA's express preemption provision, 29 U.S.C. § 1144.

10  Not. of Removal (Docket No. 14, Ex. 2) ¶¶ 11-15. Plaintiff argued there (as she does here) that §

11  1144 vested the district court with original jurisdiction by operation of 28 U.S.C. § 1331, which

12  states that "district courts shall have original jurisdiction of all civil actions arising under the

13  Constitution, laws, or treaties of the United States." Judge Tucker's decision granting Defendant's

14  motion to remand fully considered, but ultimately rejected, Plaintiff's argument that federal question

15  jurisdiction existed based on ERISA's preemption provision. Citing the Supreme Court's opinion in

16  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 213 (2004), the court found that "[i]n the Ninth Circuit, a

17  state law claim is completely preempted by ERISA, and therefore removable to federal court, only if

18  it meets the two-part test articulated by the Supreme Court in *Davila*." Remand Order at 4.

19  Focusing on the second prong of the *Davila* test, Judge Tucker found:

20          [A] state claim is completely preempted by ERISA only where there is
            no other independent legal duty that is implicated by a defendant's
21          actions. In the instant case, [Defendant]'s claim arises out of
            independent legal duties completely unrelated to ERISA. These
22          independent duties were imposed upon [Plaintiff] based on the ATRO
            [automatic temporary restraining order] issued in the family court
23          proceeding . . . [Defendant] is correct that the Family Law orders stand
            on their own and are enforceable whether or not an ERISA plan is
24          involved. ERISA does not completely preempt the state court action
            simply because these independent legal duties arising out of the
25          subject orders and judgment may ultimately have an effect on
            ownership rights to sums already distributed by an employee benefit
26          plan . . . The Court concludes that [Defendant]'s state probate action to
            recover assets allegedly misappropriated in violation of state court
27          orders is not completely preempted by ERISA. Accordingly, the state
            court claim has not been converted into a federal claim and the Court
28          lacks subject matter jurisdiction over this case.

United States District Court

For the Northern District of California

1    Removal Order at 5-6 (citations and quotation marks omitted).

2         Plaintiff's instant complaint for declaratory relief seeks to relitigate precisely the same

3    question of federal subject matter jurisdiction resolved by Judge Tucker in *Wendy Hatch,*

4    *Administrator of the Estate of John K. Hohu aka John Hohu v. Linda Hohu and Does 1-5 inclusive*,

5    Case No. 12-CV-1067 JST-FMO.  Plaintiff's complaint states that this Court has jurisdiction over

6    this matter under 28 U.S.C. § 1331 "as this case raises questions arising under the Supremacy Clause

7    of the United States Constitution and ERISA."  Compl. ¶ 3.  Both causes of action advanced by

8    Plaintiff are premised on 29 U.S.C. § 1144, ERISA's express preemption provision, and state that

9    "[a] declaratory judgment is necessary to avoid prosecution of a preempted claim," that is,

10   Defendant's state probate action.  *See* Compl. ¶¶ 26, 28, 31, 33.  Since the issue of federal subject

11   matter jurisdiction over Plaintiff's ERISA preemption claim has already been "actually litigated and

12   determined by a valid and final judgment, and the determination [was] essential to the judgment,"

13   *Arizona v. California*, 530 U.S. at 414, this Court finds that Plaintiff's complaint should be

14   dismissed for lack of subject matter jurisdiction under the doctrine of collateral estoppel.

15        2.    Original vs. Removal Jurisdiction

16        Plaintiff advances two arguments as to why collateral estoppel ought not apply to the

17   complaint pending before this Court, but neither argument is persuasive.  First, Plaintiff attempts to

18   draw a distinction between a federal district court's removal jurisdiction and its original jurisdiction

19   in support of her argument that the issue of jurisdiction has not been "actually litigated."  This,

20   however, is a distinction without a difference.  Federal removal jurisdiction is governed by 28

21   U.S.C. § 1441, which states that "[e]xcept as otherwise expressly provided by Act of Congress, any

22   civil action brought in a State court of which the district courts of the United States have *original*

23   *jurisdiction*, may be removed by the defendant or the defendants, to the district court of the United

24   States for the district and division embracing the place where such action is pending."  28 U.S.C. §

25   1441(a) (emphasis added).  Federal question jurisdiction under 28 U.S.C. § 1331 is also established

26   through "original jurisdiction."  *See* 28 U.S.C. § 1331 ("The district courts shall have *original*

27   *jurisdiction* of all civil actions arising under the Constitution, laws, or treaties of the United States.")

28   (emphasis added).  The presence of "original jurisdiction," therefore, establishes a federal court's

United States District Court

For the Northern District of California

ability to hear actions both originally filed with the court under § 1331, as well as those removed to federal court via § 1441.  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997) ("The propriety of removal thus depends on whether the case originally could have been filed in federal court.") (citation omitted); *People of State of Cal. v. Beltz Travel Serv., Inc.*, 379 F. Supp. 948, 950 (N.D. Cal. 1974) ("Removal jurisdiction is not intended as a device for easing into federal court claims which could not have been brought there initially.  The Court's removal jurisdiction under section 1441 is 'keyed' to its original jurisdiction under section 1331.") (citation omitted).  As such, the distinction between removal and original jurisdiction has no impact on the application of collateral estoppel in this matter.

       3.    <u>Unappealable Orders</u>

      Second, Plaintiff argues that "[c]ollateral estoppel is never applicable to a district court's remand order because such orders are not appealable."  Plaintiff's Supplemental Brief ("Pl.'s Supp. Br.") (Docket No. 22) at 1.  Authorities are split on whether the doctrine of collateral estoppel applies to a district court's finding that it lacks subject matter jurisdiction over a case when it subsequently remands back to state court a matter that had been previously removed.[2]  The crux of the disagreement on this question centers on the fact that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."  28 U.S.C. § 1447(c).

      On one hand, a number of authorities have held that "[a]s between two federal district courts, the inability to appeal from the order of remand does not permit the issue actually determined in one federal court to be relitigated in the second action."  Moore's Federal Practice, 3rd. Ed. (2012), §

---

[2]  *See generally Andrews v. Modell*:

> There is a considerable amount of disagreement as to whether remand orders – or, even more generally, any orders that are unappealable – may trigger collateral estoppel in subsequent proceedings . . . Indeed, the precedent, as well as the commentary, on this issue seems like the proverbial Gordian Knot, with different approaches being taken among, as well as within, the Courts of Appeals, and with some of the approaches appearing, at least at first blush, to conflict with Supreme Court pronouncements.  Not wishing to draw comparisons with Alexander the Great or Henry V . . . the Court shall bypass this issue . . .

636 F. Supp. 2d 213, 218-19 (S.D.N.Y. 2008).

United States District Court

For the Northern District of California

132.03(4)(k)(iv).  *See, e.g.*, *Johnson Steel St.-Rail Co v. William Wharton, Jr, & Co*, 152 U.S. 252, 261 (1894) (" The existence or nonexistence of a right, in either party, to have the judgment in the prior suit re-examined, upon appeal or writ of error, cannot, in any case, control this inquiry.");[3] *Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634, 636-37 (5th Cir. 1974) ("Estoppel by judgment will not permit matters actually litigated and determined between the same parties in one proceeding to be relitigated . . . [a]s between the two federal district courts, the inability to appeal from the order of remand does not permit the issue actually litigated and determined in the federal court in [the first action] to be relitigated in the second action.").  *See also* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4436.[4]

---

[3]  This nineteenth century holding from *Johnson Steel* was embraced with some caution by the Supreme Court in the 1980 case of  *Standefer v. U. S.*, 447 U.S. 10, 23 n.18 (1980) ("This is not to suggest that the availability of appellate review is always an essential predicate of estoppel.  *See Johnson Co. v. Wharton*, 152 U.S. 252, 14 S.Ct. 608, 38 L.Ed. 429 (1894); *see generally* 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.416[5] (2d ed. 1974).  The estoppel doctrine, however, is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct.  In the absence of appellate review, or of similar procedures, such confidence is often unwarranted.").

[4]  Wright and Miller present an extended discussion of the split amongst authorities on this question.  In part, they explain:

> Although a dismissal for lack of jurisdiction does not bar a second action as a matter of claim preclusion, it does preclude relitigation of the issues determined in ruling on the jurisdiction question . . . Preclusion may be defeated, however, when the removal statutes prohibit appellate review of a district court decision that remands to state court for want of subject-matter jurisdiction.  *Courts have disagreed on this question*.  The policy that denies review, however, suggests strongly that inconsistent attempts to invoke federal jurisdiction be rejected.  Review is denied because it is more important to achieve final resolution of the dispute without delay for protracted wrangling over jurisdiction.  *Preclusion on the jurisdiction question should apply both on a subsequent attempt to remove and to an independent federal filing*.  But nonmutual preclusion properly may be denied because the need to minimize the disruption caused by removal does not extend to one who was not a party to the removed action.

> Ordinarily, issue preclusion on the subject-matter jurisdiction question takes the form of a direct estoppel against a second effort to assert the same basis of jurisdiction for the same claim.
> . . .
> An exception may be required, moreover, denying preclusion when a district court remands a removed action to state court on finding there is no federal question to support subject-matter jurisdiction.  The removal statute, 28 U.S.C.A. § 1447(d), prohibits review of the

United States District Court

For the Northern District of California

On the other hand, authorities have held that "[a]lthough an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded" when "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action."  Restatement (Second) of Judgments § 28(1) (1980).  *See, e.g.*, *Health Cost Controls of Illinois, Inc. v. Washington* 187 F.3d 703, 708-09 (7th Cir.1999) (holding that "[a]n unappealable ruling, however, is not res judicata," and since a "district court's remand order was unappealable because the ground was lack of subject-matter jurisdiction," the remand order did not "conclude the issue whether the district court has jurisdiction over Health Cost's new and materially identical suit."); *Covanta Onondaga Ltd. v. Onondaga County Res. Recovery Agency*, 318 F.3d 392, 397 (2d Cir. 2003) (since a "remand order is not appealed . . . then it is highly unlikely that the order has preclusive effect."); *Nutter v. Monongahela Power Co.*, 4 F.3d 319, 322 (4th Cir. 1993) ("While the availability of appellate review is not always an essential predicate of estoppel, we do not believe the district court's jurisdictional findings incident to remand should preclude relitigation of the same issues in state court.  Accordingly, we hold that the district court's jurisdictional findings regarding complete preemption have no preclusive effect.") (internal citations and quotation marks omitted).

The Ninth Circuit has not yet opined directly on the question of whether the unappealable nature of a remand order deprives it of any preclusive effect in subsequent proceedings.  However, at least two reported cases have determined, in dicta, that collateral estoppel does not apply to unappealable rulings.  In *Envtl. Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*, the Ninth Circuit held that defendant Pacific Lumber did not have prudential standing to challenge certain extraneous statements in a district court order, in part, because the extraneous statements "will not have collateral estoppel effects under our case law."  257 F.3d 1071, 1076 (9th Cir. 2001).  Considering

---

remand order "by appeal or otherwise."  In this setting the best resolution may be to preclude relitigation of the removal issue but to leave the merits of the federal question open for independent decision in the state courts.

Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4436 (emphasis added).

United States District Court

For the Northern District of California

whether Pacific Lumber would be subjected to "adverse collateral rulings" as a consequence of the extraneous statements in the order, the court observed that "argument from collateral estoppel consequences has elements of circularity. *As collateral estoppel does not apply to an unappealable determination*, simply holding a ruling unappealable eliminates any prospect of preclusion." *Id*. at 1076 (quoting *Sea-Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 648 (D.C. Cir. 1998)) (emphasis added).  However, the court ultimately held that the extraneous statements "have no collateral estoppel effect," not because they were unappealable, but "because they are immaterial to the judgment, [and] also because they were entered without jurisdiction." *Id*. at 1076.  Similarly, in *Dixon v. Wallowa County*, the Ninth Circuit raised the issue during consideration of a cross-appeal of the denial of a county sheriff's motion for summary judgment in a 42 U.S.C. § 1983 case.  336 F.3d 1013 (9th Cir. 2003).  In assessing the sheriff's argument that the "district court erred in concluding that he participated in a constitutional violation by his decision to seize [appellant's] residence," the court held that the sheriff "lacks standing to make this cross-appeal, since he was not aggrieved in the district court," because the "district court's determination that [the sheriff] participated in the constitutional violation was immaterial to the final judgment." *Id*., 366 F.3d at 1020.  Again, in dicta, the court observed that "[t]hough there is [a standing] exception if the adverse ruling could serve as the basis for collateral estoppel in subsequent litigation, this exception does not save [the sheriff's] cross-appeal because the issue of his participation in the constitutional violation has no issue preclusive effect.  Issue preclusion does not apply to an issue that is not appealable." *Id*. at 1020 (internal citation omitted) (citing Restatement (Second) Of Judgments § 28(1) (1982) and *Envtl. Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*, 257 F.3d at 1076).

        While the Ninth Circuit has thus suggested in *dicta*, that appealability is the *sine qua non* of preclusion, it has not squarely held so.  Until it does, the weight of authority clearly rests with the view that unreviewable remand orders have preclusive force in subsequent litigation between the same parties.  *See* Moore's Federal Practice, 3rd. Ed. (2012), § 132.03(4)(k)(iv) ("When a case is removed from state to federal court, and then remanded back to the state court for want of subject matter jurisdiction, the decision to remand is not subject to appeal.  In this situation, it might be argued that the determination of the jurisdictional issue should not be given issue preclusive effect in

United States District Court

For the Northern District of California

1    a subsequent attempt to invoke federal jurisdiction on the ground that the determination of the issue

2    was not subject to appeal.  Authority is to the contrary, however.").  To hold otherwise would

3    facilitate forum shopping and extensive re-litigation over the threshold question of subject matter

4    jurisdiction.

5              4.          Confidence in Earlier Decision

6              Rather than applying a categorical rule against collateral estoppel in this context, the Court

7    looks to a more fundamental principle which drives issue preclusion.  The Supreme Court sounded a

8    cautionary note in *Standefer v. U. S.* when it embraced the nearly 100 year old holding from *Johnson*

9    *Steel St.-Rail Co v. William Wharton, Jr, & Co* that "[t]he existence or nonexistence of a right, in

10   either party, to have the judgment in the prior suit re-examined, upon appeal or writ of error, cannot,

11   in any case, control" whether preclusive effect can be given to a prior judgment.  *Johnson Steel St.-*

12   *Rail Co,* 152 U.S. at 261.  *Standefer,* citing *Johnson Steel St.-Rail Co,* acknowledged that while "the

13   availability of appellate review is always an essential predicate of estoppel," the estoppel doctrine

14   "is premised upon an underlying confidence that the result achieved in the initial litigation was

15   substantially correct" and "in the absence of appellate review, or of similar procedures, such

16   confidence is often unwarranted."  *Standefer*, 447 U.S. at 23 n.18.

17             The key question here is whether, despite the absence of appellate review, confidence in

18   Judge Tucker's decision on jurisdiction is warranted.  In this case, confidence is warranted because

19   the Court is convinced that Judge Tucker's analysis of subject matter jurisdiction over Plaintiff's

20   claims was and is correct.

21             The Supreme Court's decision in *Aetna Health Inc. v. Davila* makes clear that in order to

22   maintain federal question jurisdiction based on a theory of complete preemption of state law claims

23   under ERISA, a plaintiff must show both that "(1) an individual, at some point in time, could have

24   brought [his or her] claim under ERISA § 502(a)(1)(B)," and (2) that "there is no other independent

25   legal duty . . . implicated by a defendant's actions."  *Marin Gen. Hosp. v. Modesto & Empire*

26   *Traction Co.*, 581 F.3d 941, 946 (9th Cir. 2009) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. at

27   210).  "[A] state-law cause of action is preempted by § 502(a)(1)(B) only if both prongs of the test

28

**United States District Court**
For the Northern District of California

1    are satisfied." *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1108 (9th Cir.

2    2011) (citations omitted).[5]

3         The Court also notes that federal jurisdiction over Plaintiff's claims may not be found under

4    the Declaratory Judgment Act, 28 U.S.C. § 2801.  While that Act "expanded the scope of the federal

5    courts' remedial powers, it did nothing to alter the courts' jurisdiction, or the 'right of entrance to

6    federal courts.'"  *Countrywide Home Loans, Inc., v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 853

7    (9th Cir. 2011) (quoting *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).

8         As Judge Tucker found, in the instant case it is clear that Defendant's claim to the proceeds

9    of John Hohu's ERISA plan benefits "arises out of independent legal duties completely unrelated to

10   ERISA."  Remand Order at 6.  Plaintiff Hohu acknowledges as much in her complaint filed with this

11   Court where she states, "notwithstanding John K. Hohu's designation of Plaintiff Hohu as the death

12   beneficiary pursuant to the terms of the plans and the plan administrators' determinations of Plaintiff

13   Hohu's entitlement to the benefits," Defendant Hatch alleges that "Plaintiff Hohu's receipt and

14   retention of the plan benefits under the Cisco Life Insurance Plan and Cisco RSU Plan were

15   wrongful because of the terms of the ATROs, the Bifurcation Order, and/or the Statement of

16   Decision and Judgment."  Compl. ¶ 23.  In essence, Defendant alleges through her state action

17   commenced under California Probate Code § 850, that Plaintiff Hohu misappropriated assets in

18   violation of state law and state family court orders.  This Court agrees with Judge Tucker that,

19   concerning Plaintiff's instant claims, "Family Law orders stand on their own" and  "ERISA does not

20   completely preempt [a] state court action simply because these independent legal duties arising out

21   of the subject orders and judgment may ultimately have an effect on ownership rights to sums

22   already distributed by an employee benefit plan."  Remand Order at 6.

23        Plaintiff challenges Defendant's ability to challenge Linda Hohu's entitlement to John

24   Hohu's plan benefits *post-distribution* by arguing that, absent a qualified domestic relations order

25   _____

26        [5] Plaintiff's reliance on *Boggs v. Boggs*, 520 U.S. 833 (1997), *Engelhoff v. Engelhoff ex rel.
     Breiner*, 532 U.S. 141 (2001), and similar cases is misplaced.  These cases address whether ERISA

27   preempts a particular state law as a defense to a state law claim.  They do not govern complete
     preemption under ERISA, nor do they present a jurisdictional holding.  *Aetna Health Inc. v. Davila*

28   is the only relevant Supreme Court opinion that directly addresses federal question jurisdiction
     premised on a theory of complete ERISA preemption.

1    ("QDRO"), ERISA's anti-alienation provision prohibits any effort to assign or alienate an ERISA

2    participant's plan benefits.  Pl.'s Opp'n. Br. at 13.  Section 1056 of ERISA states that "[e]ach

3    pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

4    29 U.S.C. § 1056(d).  An exception to this general prohibition on alienation is made concerning the

5    "creation, assignment, or recognition of a right to any benefit payable with respect to a participant

6    pursuant to a domestic relations order," including a "qualified domestic relations order" that meets

7    certain specified terms outlined in the statute.  29 U.S.C. § 1056(d)(3).  Plaintiff argues that

8    Defendant cannot take advantage of this provision because "[n]o Qualified Domestic Relations

9    Order, within the meaning of 29 U.S.C. § 1056 (d)(3)(B), was ever entered by the Alameda Family

10   Court with respect to the Cisco Life Insurance Plan of the Cisco RSU Plan."  Compl. ¶ 17.

11          As Judge Tucker acknowledged in her Remand Order:

12              The Supreme Court has expressly left it open whether the estate of a
                deceased participant may bring an action in state or federal court
13              against the designated beneficiary to obtain the benefits *after* they are
                distributed.  *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,
14              555 U.S. 285, 300 n.10 (2009); *Carmona v. Carmona*, 603 F.3d 1041,
                1062 (9th Cir. 2010) *cert. denied*, *denied*, —— U.S. ——, 131 S. Ct.
15              1492, 179 L. Ed. 2d 305 (2011) ("It may not be that all constructive
                trusts instituted by state courts, particularly those that seek to recover
16              ill-gotten gains, will have a sufficient connection with or reference to
                an ERISA plan to trigger ERISA's preemption provision.").
17

18   Remand Order at 6 n.4 (emphasis added).  Several courts have addressed the application of ERISA's

19   anti-alienation provision to benefits after they have been distributed, and found "no conflict with

20   either ERISA's objectives or relevant Supreme Court precedent," and held "that ERISA does *not*

21   preempt *post-distribution* suits against ERISA beneficiaries."  *Andochick v. Byrd*, 709 F.3d 296, 301

22   (4th Cir. 2013) (emphasis added).  In *Andochick*, the Fourth Circuit noted "that in reaching this

23   conclusion, we adopt the same view as every published appellate opinion to address the question."

24   *Id*. (citing *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 135-39 (3d Cir. 2012); *Appleton*

25   *v. Alcorn*, 291 Ga. 107, 109-10 (2012); *Sweebe v. Sweebe*, 474 Mich. 151, 159-60 (2006); *Pardee v.*

26   *Pers. Representative for Estate of Pardee*, 112 P.3d 308, 315-16 (Okla. Civ. App. 2004)).  The Ninth

27   Circuit has also interpreted the applicability of ERISA's anti-alienation provisions to plan benefits

28   already distributed by a plan administrator, and has held "that this section does not preclude" a party

United States District Court

For the Northern District of California

15

United States District Court

For the Northern District of California

1  from suing under state law to recover funds "from benefits *received* [i.e. distributed] from ERISA-

2  qualified [benefit] plans." *Wright v. Riveland*, 219 F.3d 905, 921 (9th Cir. 2000) (emphasis added).

3  Accordingly, Plaintiff Hohu may not rely on ERISA's anti-alienation provision to shield distributed

4  plan benefits from Defendant Hatch's state law claims, nor re-frame her ERISA preemption action

5  into an action to preserve plan benefits under ERISA's anti-alienation provisions.

6        Consequently, the Court finds confidence in Judge Tucker's conclusions regarding federal

7  subject matter jurisdiction over Plaintiff's ERISA claims is warranted because her decision while

8  unreviewable "was substantially correct." *Standefer*, 447 U.S. at 23 n.18.  Plaintiff has offered no

9  persuasive argument to the contrary.

10  B.    Rule 11 Sanctions

11        Defendant's motion includes a Motion for Sanctions under Rule 11 against Plaintiff Linda

12  Hohu and her attorney for allegedly filing an "action asserting subject matter jurisdiction under

13  ERISA [despite] knowing that it completely lacks a factual foundation for subject matter jurisdiction

14  as a result of [Judge Tucker] . . . having already determined said claims."  Pl.'s Mot to Dismiss at 2.

15  Defendant seeks $ 3,646 in sanctions, an amount representing the attorney fees and costs incurred by

16  Wendy Hatch in seeking the dismissal of Plaintiff's action before this Court.[6]

17        Rule 11 states, "[b]y presenting to the court a pleading, written motion, or other paper –

18  whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party

19  certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry

20  reasonable under the circumstances . . . [that] the claims, defenses, and other legal contentions are

21  warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing

22  existing law or for establishing new law." Fed. R. Civ. P. 11(b).  Rule 11 permits the imposition of

23  monetary and non-monetary sanctions on parties who violate its terms. *See* Fed. R. Civ. P. 11(c)(4).

24  A court may, on its own, "order an attorney, law firm, or party to show cause why conduct

25  specifically described in the order has not violated Rule 11 . . ." Fed. R. Civ. P. 11(c)(3).  A party

26  _____

27        [6] Wendy Hatch's attorney, Heidi Stilb Lewis, has filed a declaration in support of
    Defendant's motion for sanctions.  *See* Declaration of Heidi Stilb Lewis (Docket No. 13, Ex. 1). The
28  declaration substantiates Defendant's calculation of the attorney fees and costs incurred in bringing
    the instant motion.

**United States District Court**
For the Northern District of California

1   may also independently move for sanctions against another party for violating Rule 11 following the

2   procedure outlined in subsection (c)(2).  If "the court determines that [Rule 11] has been violated"

3   after the party or attorney facing sanctions has had a reasonable opportunity to respond, "the court

4   may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is

5   responsible for the violation."  Fed. R. Civ. P. 11(c)(1).  "Courts must apply an objective test in

6   assessing whether the rule has been violated.  A violation of the rule does not require subjective bad

7   faith."  *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993) (citations omitted).

8         Defendant argues that sanctions are warranted in this matter because Plaintiff knew, by virtue

9   of Judge Tucker's Remand Order, that the federal courts lacked subject matter jurisdiction over her

10   claims, and yet opted to file a second action before this Court re-pleading the precise jurisdictional

11   arguments already rejected by Judge Tucker.  In support of her motion, Defendant cites the Ninth

12   Circuit's opinion in *Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797 (9th Cir.

13   1986).  In *Frontline Ventures*, the Ninth Circuit reviewed a decision by the U.S. District Court for

14   the District of Alaska to award sanctions against Orange Production Credit Association ("OPCA")

15   under Rule 11.  OPCA, the mortgagee of a ship, had filed suit in the U.S. District Court for the

16   Central District of California against the ship's mortgagor (Frontline Ventures, Ltd.) to foreclose on

17   the mortgage and recover a deficiency on its note.  The California district court dismissed the suit for

18   lack of subject matter jurisdiction.  *Id.*, 792 F.2d 797, 799.  Subsequently, after Frontline Ventures

19   again defaulted on its payments on the note, OPCA filed a second suit against the mortgagor in the

20   district court in Alaska.  The Alaska district court granted defendant's motion to dismiss the case

21   "for lack of subject matter jurisdiction, and determined that Rule 11 sanctions would be imposed

22   against OPCA."  *Id.*, 792 F.2d at 800.  Upholding the imposition of sanctions, the Ninth Circuit held

23   that "OPCA violated Rule 11 by filing a complaint in the federal district court in Alaska which it

24   must have known completely lacked a factual foundation for subject matter jurisdiction" because, as

25   the Alaska district court found, "OPCA had refiled in Alaska the same lawsuit it had filed in

26   California knowing full well that the district court in Alaska lacked subject matter jurisdiction just as

27   the district court in California had lacked such jurisdiction."  *Id.* at 801.  Plaintiff's opposition brief

28   does not address Defendant's motion for sanctions.  *See* Pl.'s Opp'n. Br. (Docket No. 17).

**United States District Court**

For the Northern District of California

1    While *Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.* contains factual similarities to

2  the case at bar, there are two significant differences between that case and the present one that

3  counsel against the imposition of sanctions.  First, there is no indication on the record before this

4  Court that Defendant Hatch has complied with Rule 11's procedural requirements for imposing

5  sanctions.  Rule 11(c)(2) provides that:

> A motion for sanctions must be made separately from any other
> motion and must describe the specific conduct that allegedly violates
> Rule 11(b).  The motion must be served under Rule 5, but it must not
> be filed or be presented to the court if the challenged paper, claim,
> defense, contention, or denial is withdrawn or appropriately corrected
> within 21 days after service or within another time the court sets.

10  Fed. R. Civ. P. 11(c)(2).  This subsection is often referred to as the Rule's "safe harbor provision."

11  "The requirements of the rule are straightforward: The party seeking sanctions must serve the Rule

12  11 motion on the opposing party at least twenty-one days before filing the motion with the district

13  court, and sanctions may be sought only if the challenged pleading is not withdrawn or corrected

14  within twenty-one days after service of the motion." *Brickwood Contractors, Inc. v. Datanet Eng'g,*

15  *Inc.*, 369 F.3d 385, 389 (4th Cir. 2004) (citations omitted).  "It is clear from the language of the rule

16  that it imposes mandatory obligations upon the party seeking sanctions, so that failure to comply

17  with the procedural requirements precludes the imposition of the requested sanctions." *Id.*, 369 F.3d

18  at 389 ("Rule 11(c)(1)(A) thus establishes conditions precedent to the imposition of sanctions under

19  the rule.  If those conditions are not satisfied, the Rule 11 motion for sanctions may not be filed with

20  the district court.  If a non-compliant motion nonetheless is filed with the court, the district court

21  lacks authority to impose the requested sanctions.").  In the instant case, there is no evidence that

22  Defendant Hatch served her Rule 11 motion on Plaintiff Hohu twenty-one days before filing it with

23  the Court.  *See* Declaration of Heidi Stilb Lewis (Docket No. 13, Ex. 1) (no mention of compliance

24  with Rule 11 procedural requirements).  Consequently, both the text of Rule 11 and the fairness

25  considerations which underlie its safe harbor provision bar Defendant's request for sanctions.[7]

---

27    [7] The fact that Plaintiff Hohu failed to contest Defendant Hatch's procedural compliance
with Rule 11 does not preclude its consideration by this Court.  Although a party can forfeit the right
28  to argue against sanctions for failure to comply with Rule 11's safe harbor provision, *see Brickwood*,
369 F.3d at 395 ("[T]he issue of whether a party has complied with the rule is subject to forfeiture if

United States District Court
For the Northern District of California

1    Second, setting aside any possible procedural defects, it is not apparent that Plaintiff's filing

2  of her declaratory relief action in this Court raises to the level of sanctionable conduct.  Defendant's

3  rational for the imposition of sanctions is based upon Judge Tucker's Remand Order, and the

4  arguably foreseeable conclusion that this Court would likewise dismiss Plaintiff's complaint for lack

5  of subject matter jurisdiction following that Order.  *See* Def.'s Mot. to Dismiss at 4 ("Having failed

6  to convince Judge Tucker that the Federal Court had subject matter jurisdiction, Linda Hohu

7  immediately filed an action in this Court whereby she asserts federal question jurisdiction under

8  ERISA and seeks under ERISA [a] determination of the same claims alleged in the [earlier

9  proceeding]."); *see also* Declaration of Heidi Stilb Lewis at 2 ("The United States District Court

10 Central District Southern division already determined in connection with the claims raised by Linda

11 Hohu's action herein[] that federal subject matter jurisdiction does not exist.  Instead of properly

12 challenging the court's decision in this regard, Linda Hohu filed the within action forcing the

13 Administrator to incur unnecessary fees and costs in connection with obtaining a dismissal of the

14 action on the grounds that this Court lacks subject matter jurisdiction.").  However, as discussed

15 *supra*, there is considerable disagreement among courts as to whether an unreviewable remand order

16 such as Judge Tucker's can have a preclusive effect on subsequent litigation between the same

17 parties.  Contrary to Defendant's assumption that "dismissal is proper under Rule 12(b)(1)" in this

18 matter "because the Court lacks subject matter jurisdiction . . . over the alleged claims as already

19 determined by the United States District Court Central District Southern Division," Def.'s Mot. to

20 Dismiss at 4 (original in caps), whether issue preclusion attaches to the previously litigated question

21 of federal subject matter jurisdiction remains an open question in the Ninth Circuit.  Consequently,

---

23 not timely raised."), the Ninth Circuit has indicated that the matter is subject to some discretion.
   *See, e.g.*, *Retail Flooring Dealers of America v. Beaulieu of America*, LLC, 339 F.3d 1146, 1150 n.5
24 (9th Cir. 2003) ("Although Retail Flooring did not raise this argument before the district court [i.e.,
   failure to comply with Rule 11's safe harbor provision], an appellate court can review an issue not
25 raised nor objected to prior to appeal if necessary to prevent manifest injustice.") (citation omitted);
   *see also Brickwood*, 369 F.3d at 398–99 ("[G]iven the important purposes served by Rule 11 . . . and
26 the mandatory nature of its language, we believe that in most cases involving failure to comply with
   the safe-harbor provisions, a proper application of the *Olano Taylor* standards [i.e., plain error on
27 appeal] will lead to correction of the error.").  *But see Rector v. Approved Fed. Sav. Bank*, 265 F.3d
   248, 251–54 (4th Cir. 2001) (holding that the safe harbor provision was not jurisdictional and that
28 the attorney waived the defense when he failed to raise the argument to the district court in the first
   instance and failed to raise it again on the first appeal).

the Court cannot objectively find, in line with *Yagman v. Republic Ins.*, that Plaintiff violated Rule 11. Put another way, the Court cannot objectively determine that Plaintiff's filing of her ERISA complaint presents "claims, defenses, and other legal contentions" that are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(c)(2).

Defendant has not shown that she complied with Rule 11's safe harbor provision prior to filing her motion for sanctions, nor has she advanced a basis for sanctions by objectively showing that Plaintiff's complaint filed in this Court violates Rule 11. As such, the Court **DENIES** Defendant's motion to impose the requested sanctions.

## IV.   CONCLUSION

For the reasons stated above, this Court finds that the doctrine of collateral estoppel bars re-litigation of the issue of federal question jurisdiction over Plaintiff's complaint. The Court, therefore **GRANTS** Defendant's motion to dismiss for lack of subject matter jurisdiction. The Court also finds that Defendant Hatch has demonstrated neither compliance with the safe harbor provisions of Rule 11, nor that the Plaintiff's conduct in this matter raises to the level of sanctionable conduct under the rule. Consequently, the Court **DENIES** Defendant's motion for sanctions. The Clerk of the Court is instructed to enter a final judgment in accordance with this opinion and close the file in the case.

This order disposes of Docket No. 13.


IT IS SO ORDERED.


Dated:  April 16, 2013

_____
EDWARD M. CHEN
United States District Judge